(86 South. 662)

No. 23550.

## BOLAN v. LOUISVILLE & N. R. CO.

(Nov. 3, 1920. Rehearing Denied Nov. 29, 1920.)

*(Syllabus by Editorial Staff.)*

Railroads ☞274(3)—Injuries from collapse of freight shed held not actionable.

A railroad was not liable for injuries to one weighing peas in a freight shed that col-lapsed, where it had started to subside prior to plaintiff's entry and plaintiff was informed of the precarious condition of the shed, even though the person in charge of the station went to the section where the peas were and went into the shed with the plaintiff; defendant being under no obligation to do more than to see to it that plaintiff was made aware of the danger.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Suit by Michael J. Bolan against the Louisville & Nashville Railroad Company. Judgment for plaintiff, and defendant appeals. Judgment set aside, and suit dismissed.

E. Marvin Underwood, General Counsel for Director General of Railroads, of Atlanta, Ga. (Denégre, Leovy & Chaffe, of New Orleans, of counsel), for appellant.

McCloskey & Benedict and Henry B. Curtis, all of New Orleans, for appellee.

PROVOSTY, J. Plaintiff, a white man, went with two assistants, colored men, to the freight shed of the defendant railroad company to weigh some sacks of peas consigned to his employer, which had been there some months.

The shed was a long, narrow structure, some 1,200 feet by 50, open in greater part on the side next to a platform which ran alongside it, and over which its roof extended. It was partitioned off into 76 sections; the partitions between the sections 40 and 41 and the sections 57 and 58 consisting of fire walls.

It had that morning begun to subside, so that when plaintiff reached there, at about midday, it had already at section 53 separated itself from the platform (which was on a separate foundation) 6 or more inches. Plaintiff entered section 50, where the peas were, and almost immediately all that part between sections 40 and 58 crashed down, and caused the injury to plaintiff—a broken leg—for which he has brought this suit in damages.

The defenses are a denial of negligence on the part of defendant, because plaintiff was

warned of the danger, and, in the alternative, contributory negligence on the part of plaintiff, because the danger was obvious, and he knew of it, and assumed the risk.

The persons in charge of the building for the defendant company were the chief delivery clerk, Mr. Barry, and a watchman, named Tapie. Both of them testify that plaintiff was duly warned against venturing into the building, in view of its unsafe condition. They are corroborated by a Mr. Pallansch, an agent of the American Sugar Refining Company, who had gone there on a like mission of weighing peas, and had abstained from venturing into the building on seeing its condition and on being warned by Mr. Barry. He says that "anybody with an eye could see that the building was in a dangerous condition." Also by a Mr. Hardin, a merchandise broker, who was there to see about his freight. Also by Mr. Maloney, a delivery clerk. They were present when plaintiff arrived, and testified that plaintiff was told of the dangerous condition of the building and warned against going into it.

Plaintiff denies that Barry warned him, but admits that "a disinterested party" may have told him.

"Q. Somebody did warn you? A. Yes, sir; men on the outside."

It seems that the white men hereinabove named stood on the platform opposite to where the building had disconnected from the platform, and that when plaintiff insisted on going into the building one of them jokingly asked him whether his life was insured, and whether he would not leave his hat behind, and what his shoes had cost, etc.; and plaintiff now says that what was said to him about the dangerous condition of the building was all as a joke—not seriously to be considered. But the seriousness of the situation was obvious, and all the above-named persons, except plaintiff and the two colored men, say that the warning given plaintiff was in all seriousness. The joking began only after plaintiff had insisted on going on to weigh the peas despite the danger.

Plaintiff would absolve himself of negligence by throwing all the responsibility on Barry, because of the latter having consented to go with him to the section where the peas were and point them out to him. But Barry did this only at plaintiff's insistence, after plaintiff had been fully advised of the danger. Whether Barry, as contended by plaintiff, entered the building, or, as he himself testifies, remained on the platform, is, in our opinion, immaterial. Defendant was under no obligation to do more than to see to it that plaintiff was made aware of the danger, and this was done beyond question.

When Barry and plaintiff started towards where the peas were, the witness Pallansch went to the telephone to inform his office of the situation. So precarious was the building that it collapsed while Pallansch was telephoning.

The judgment appealed from is set aside, and plaintiff's suit is dismissed, with costs in both courts.